

FILED
CLERK, U.S. DISTRICT COURT

JUN 27 2008

CENTRAL DISTRICT OF CALIFORNIA
BY                        DEPUTY

1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11    JOHN CHO,                    )    NO. CV 07-3286-AHM(E)
                                   )
12              Petitioner,        )
                                   )    ORDER ADOPTING FINDINGS,
13         v.                      )
                                   )    CONCLUSIONS AND RECOMMENDATIONS
14    D.K. SISTO, Warden,          )
                                   )    OF UNITED STATES MAGISTRATE JUDGE
15              Respondent.        )
      _____)

16

17         Pursuant to 28 U.S.C. § 636, the Court has reviewed the Petition

18    and the attached Report and Recommendation of United States Magistrate

19    Judge.  The Court approves and adopts the Magistrate Judge's Report

20    and Recommendation.

21

22         IT IS ORDERED that Judgment be entered denying and dismissing the

23    Petition with prejudice.

24    ///

25    ///

26    ///

27    ///

28    ///

1    IT IS FURTHER ORDERED that the Clerk serve copies of this Order,

2  the Magistrate Judge's Report and Recommendation and the Judgment

3  herein by United States mail on Petitioner and counsel for Respondent.

4

5    LET JUDGMENT BE ENTERED ACCORDINGLY.

6

7    DATED: _____, 2008.

8

9    _____
                    A. HOWARD MATZ
10                  UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

JOHN CHO,

                Petitioner,

    v.

D.K. SISTO, Warden,

                Respondent.

_____

)  NO. CV 07-3286-AHM(E)
)
)
)
)  REPORT AND RECOMMENDATION OF
)
)  UNITED STATES MAGISTRATE JUDGE
)
)
)

    This Report and Recommendation is submitted to the Honorable A. Howard Matz, United States District Judge, pursuant to 28 U.S.C. section 636 and General Order 05-07 of the United States District Court for the Central District of California.

**PROCEEDINGS**

    Petitioner filed a "Petition for Writ of Habeas Corpus By a Person in State Custody" on May 18, 2007, to which is attached a supporting Memorandum of Points and Authorities ("Pet. Mem."). Respondent filed an Answer on September 19, 2007, asserting that the

1  Petition is untimely.  Petitioner filed an "Opposition to Respondent's
2  Answer to the Petition for Writ of Habeas Corpus" on October 24, 2007,
3  which the Court construes as Petitioner's Reply.

4

5  **BACKGROUND**

6

7  A jury found Petitioner guilty of first degree burglary,
8  attempted first degree robbery, and receiving stolen property
9  (Reporter's Transcript ["R.T."] 2102-10; Clerk's Transcript ["C.T."]
10  170-72, 175-76).  The jury found true the allegation that Petitioner
11  was armed with a firearm during the commission of the burglary and
12  attempted robbery offenses (R.T. 2104, 2108-10; C.T. 171-72, 175-76).
13  The court found true the allegations that Petitioner had suffered two
14  prior robbery convictions qualifying as "strikes" under California's
15  Three Strikes Law, California Penal Code sections 667(b) - (i) and
16  1170.12(d) (R.T. 2412-13; C.T. 69, 196).[1]  The court dismissed one of
17  the strikes and sentenced Petitioner to a term of fifteen years and
18  four months (R.T. 2722-25; C.T. 237-38).

19

20  The California Court of Appeal affirmed the judgment on May 18,
21  2004 (Petitioner's Ex. D; Respondent's Lodgment 6; see People v. Cho,

22

23  _____

    [1]  The Three Strikes Law consists of two nearly identical
24  statutory schemes.  The earlier provision, enacted by the
    Legislature, was passed as an urgency measure, and is codified as
25  California Penal Code §§ 667(b) - (i) (eff. March 7, 1994).  The
    later provision, an initiative statute, is embodied in California
26  Penal Code § 1170.12 (eff. Nov. 9, 1994).  See generally People
    v. Superior Court (Romero), 13 Cal. 4th 497, 504-05, 53 Cal.
27  Rptr. 2d 789, 791-792, 917 P.2d 628 (1996).  The court sentenced
    Petitioner under the initiative version (C.T. 237-38).
28

2

2004 WL 1098994 (Cal. Ct. App. 2d Dist. May 18, 2004). Petitioner did not file a petition for review in the California Supreme Court.

On May 5, 2005, Petitioner signed a habeas petition, which was filed in the Los Angeles County Superior Court on May 17, 2005 (Respondent's Lodgment 7). The Superior Court denied the petition on June 15, 2005 (Petitioner's Ex. R; Respondent's Lodgment 7).

On July 25, 2005, Petitioner filed a habeas corpus petition in the California Court of Appeal (Respondent's Lodgment 8). On August 2, 2005, the Court of Appeal denied the petition with citations to In re Alvernaz, 2 Cal. 4th 924, 944-46, 8 Cal. Rptr. 2d 713, 830 P.2d 747 (1992), and In re Swain, 34 Cal. 2d 300, 303-04, 209 P.2d 793 (1949), cert. denied, 338 U.S. 944 (1950), 340 U.S. 938 (1951), and 342 U.S. 914 (1952) ("Swain") (Petitioner's Ex. S; Respondent's Lodgment 8).[2]

On July 26, 2006, Petitioner signed a California Supreme Court habeas corpus petition, which was filed on August 15, 2006, in In re Cho, case number S145836 (Respondent's Lodgment 9). Petitioner also signed a second California Supreme Court habeas petition on July 26, 2006, which appears to be identical to the petition in case number S145836, but which was filed in the California Supreme Court under a

_____

[2]   The citation to In re Alvernaz appears to refer to the issue of prejudice from asserted ineffective assistance of counsel. See In re Alvernaz, 2 Cal. 4th at 944-46. The citation to Swain may indicate either that the petition was untimely or that the petition failed to allege facts with sufficient particularity. See Swain, 34 Cal. 2d at 303-04.

1  separate case number, in In re Cho, case number S145984 (Respondent's

2  Lodgment 10).[3]  On April 11, 2007, the California Supreme Court denied

3  the petition in case number S145836 with citations to Swain and People

4  v. Duvall, 9 Cal. 4th 464, 474, 37 Cal. Rptr. 2d 259, 886 P.2d 1252

5  (1995) ("Duvall") (Respondent's Lodgment 9).  These citations appear

6  to reference the California rule requiring a habeas petitioner to

7  state fully and with particularity the facts upon which relief is

8  sought.  See Duvall, 9 Cal. 4th at 474; Swain, 34 Cal. 2d at 304; see

9  also Gaston v. Palmer, 417 F.3d 1030, 1036-39 (9th Cir. 2005),

10 modified 447 F.3d 1165 (9th Cir. 2006), cert. denied, 127 S. Ct. 979

11 (2007) (describing pleading requirements of Duvall and Swain).  On the

12 same day, April 11, 2007, the California Supreme Court denied the

13 petition in case number S145984 without opinion or citation

14 (Respondent's Lodgment 10).

15

16                      **SUMMARY OF TRIAL EVIDENCE**

17

18     The following factual summary is taken from the opinion of the

19 California Court of Appeal in People v. Cho, 2004 WL 1098994 (Cal. Ct.

20 App. 2d Dist. May 19, 2004).  See Galvan v. Alaska Dep't of

21 Corrections, 397 F.3d 1198, 1199 & n.1 (9th Cir. 2005) (taking factual

22 summary from state appellate decision).

23 ///

24

25      [3]    Petitioner contends he submitted an original and a copy

26 of his petition to the California Supreme Court, and that the
   California Supreme Court clerk mistakenly filed in the copy as a

27 separate petition (see Reply, p. 5).  Unless the context
   otherwise requires, the Court henceforth will refer to

28 Petitioner's California Supreme Court petition in the singular.

4

1                                    1.   Facts.

2

3          Young Ho Kim (Mr. Kim) and Dorothy S. Kim (Mrs. Kim)

4     lived in a single family residence in Monterey Park,

5     California.   On September 12 or 13, 2000, they discovered

6     several items were missing from their home, including a

7     necklace, diamond ring, credit cards, and an Omega watch.

8     Also, the dining room chairs had been moved and various

9     drawers throughout the house had been opened and not closed.

10    After this discovery, Mr. Kim began carrying the firearm he

11    usually kept at the liquor store he operated.

12

13         On September 14, 2000, appellant took the diamond ring

14    and the Omega watch to a pawnshop where he discussed pawning

15    them.

16

17         The following day, September 15, 2000, appellant

18    returned to the pawnshop.   He sold the diamond ring for

19    $200, but did not pawn the watch.   At the time, appellant

20    presented a driver's license identifying himself as Seung Ho

21    Sun.   He also put his thumbprint on a form.   Surveillance

22    cameras recorded appellant's presence in the store on

23    September 15, 2000.

24

25         The Kims owned a van, which they parked next to their

26    home.   It was locked and a spare key was in a drawer.   On

27    September 15, 2000, when Mr. Kim left for work, the van was

28    locked.

                                      5

On September 15, 2000, at about 10:30 p.m., Mr. Kim arrived at home.  The house was a mess and an Asian male was walking toward him.  Mr. Kim backed away from the man. Mr. Kim then saw appellant coming from the corridor toward him.  Mr. Kim grabbed his firearm and shot at appellant. Appellant tried to protect himself by going behind a chair; he fell to the floor.  The other Asian male escaped.

Mr. Kim went into his backyard and telephoned 9-1-1. The police arrived and searched the house, but no one was discovered.  The walls were covered with blood.  Thereafter, the police discovered a trail of blood leading from the house to the Kims' van that was parked in the driveway. Appellant was found lying inside the van.  He had been shot and he was bloody.  Appellant was lying on top of a loaded semiautomatic firearm.  A spare key to the van was lying near the Kims' front porch.  A pawn slip showing the sale of the diamond ring was lying on the ground, as was one of the Kims' canceled checks.

The Omega watch was found inside the home, in the hallway.  There was blood near the watch.  Mr. Kim's gym bag was in the hallway.  It had been emptied and duct tape had been placed inside the bag.  Another roll of duct tape was on an end table.  The Kims did not own any duct tape.

///

///

///

1                              2.   Defense.

2

3           Appellant testified on his own behalf to the following.

4    He also went by the name of Seung Son.   Contrary to

5    Mrs. Kim's testimony, he had met her previously.   He

6    produced a business card containing Mrs. Kim's telephone

7    numbers.   Sang Bae Yim (Yim) owed him $20,000.   Yim gave him

8    a watch and a ring, as partial satisfaction of the money

9    owed.   He did not know the items had been stolen.   On

10   September 15, 2000, at Yim's direction, he pawned the ring.

11   Yim took him to the mall and later that day to the Kim

12   residence.   Two young Korean males welcomed him into the Kim

13   home.   Yim left the residence telling him that he would

14   return with the money.   He went into the backyard where, for

15   several hours, he smoked and made cellular telephone calls

16   while he awaited Yim's return.   When he heard a car drive

17   up, he went into the house and was shot.   He fell and lost

18   consciousness.   When he woke up he was in pain.   He crawled

19   outside, to the van.   While inside the van he used his

20   cellular telephone to call someone to come and pick him up.

21   Even though he was hurt, he did not call 9-1-1 because there

22   was a warrant out for his arrest.

23

24   (Respondent's Lodgment 6, pp. 204; <u>People v. Cho</u>, WL 1098994, at *1-2

25   (Cal. Ct. App. 2d Dist. May 18, 2004)).

26   ///

27   ///

28   ///

7

**PETITIONER'S CONTENTIONS**

Petitioner contends:

1.   The trial court allegedly erred in denying Petitioner's motion for a mistrial made on the ground that the prosecution assertedly withheld from the defense a detective's report concerning statements Petitioner made in a pretrial interview (Pet. Mem. Ground One);

2.   The trial court allegedly committed instructional error which assertedly lessened the prosecution's burden of proof (Pet. Mem., Ground Two);

3.   Petitioner's trial counsel allegedly provided ineffective assistance, assertedly by failing to:

a.   conduct an adequate investigation;

b.   ask assertedly "crucial questions" on cross-examination; and

c.   address the prosecutor's alleged misconduct;

(Pet. Mem., Grounds Three and Four);

4.   Petitioner's appellate counsel allegedly provided ineffective assistance by failing to assert on appeal Petitioner's claims of

1   suppression of evidence, instructional error and ineffective

2   assistance of trial counsel (Pet. Mem., Ground Seven).[4]

3

4                              DISCUSSION

5

6       The "Antiterrorism and Effective Death Penalty Act of 1996"

7   ("AEDPA"), signed into law April 24, 1996, amended 28 U.S.C. section

8   2244 to provide a one-year statute of limitations governing habeas

9   petitions filed by state prisoners:

10

11      (d)(1) A 1-year period of limitation shall apply to an

12      application for a writ of habeas corpus by a person in

13      custody pursuant to the judgment of a State court.   The

14      limitation period shall run from the latest of –

15

16      (A) the date on which the judgment became final by the

17      conclusion of direct review or the expiration of the time

18      for seeking such review;

19

20      (B) the date on which the impediment to filing an

21      application created by State action in violation of the

22   _____

23       [4]   The Memorandum attached to the present Petition appears
     to be a copy of a memorandum Petitioner attached to his
24   California Supreme Court petition (see Respondent's Lodgments
     9, 10).  Grounds Five and Six contained in this Memorandum
25   assert, respectively, that the Superior Court's failure to issue
     an order to show cause in the habeas proceedings and that
26   Petitioner's efforts to obtain habeas relief allegedly were
     impeded by state-imposed obstacles assertedly beyond Petitioner's
27   control.  Hence, Grounds Five and Six fail to state a claim for
     federal habeas relief.
28

                                   9

1     Constitution or laws of the United States is removed, if the

2     applicant was prevented from filing by such State action;

3

4     (C) the date on which the constitutional right asserted was

5     initially recognized by the Supreme Court, if the right has

6     been newly recognized by the Supreme Court and made

7     retroactively applicable to cases on collateral review; or

8

9     (D) the date on which the factual predicate of the claim or

10    claims presented could have been discovered through the

11    exercise of due diligence.

12

13    (2) The time during which a properly filed application for

14    State post-conviction or other collateral review with

15    respect to the pertinent judgment or claim is pending shall

16    not be counted toward any period of limitation under this

17    subsection.

18

19         Where, as here, a petitioner does not file a petition for review

20    in the California Supreme Court, for purposes of the AEDPA statute of

21    limitations the conviction becomes final forty days from the date the

22    Court of Appeal filed its decision.  See Smith v. Duncan, 297 F.3d

23    809, 812-13 (9th Cir. 2002).  Under this rule, Petitioner's conviction

24    became final on June 27, 2004, the fortieth day after the Court of

25    Appeal's opinion of May 18, 2004.  Therefore, the statute of

26    limitations commenced running on June 28, 2004, unless subsections B,

27    C or D of 28 U.S.C. section 2244(d)(1) apply in the present case.  See

28    28 U.S.C. § 2244(d)(1)(A); Smith v. Bowersox, 159 F.3d 345, 347-48

(8th Cir. 1998), <u>cert. denied</u>, 525 U.S. 1187 (1999); <u>see also</u> <u>Nino v.</u>
<u>Galaza</u>, 183 F.3d 1003, 1006 (9th Cir. 1999), <u>cert. denied</u>, 529 U.S.
1104 (2000) (AEDPA statute of limitations is not tolled between the
conviction's finality and the filing of the first state collateral
challenge).


Section 2244(d)(1)(C) is inapplicable.  Petitioner does not
assert, nor could he, that his conviction violated any constitutional
right "newly recognized by the Supreme Court and made retroactively
applicable to cases on collateral review."  <u>See</u> <u>Tyler v. Cain</u>, 533
U.S. 656, 664-68 (2001) (for purposes of second or successive motions
under 28 U.S.C. section 2255, a new rule is made retroactive to cases
on collateral review only if the Supreme Court itself holds the new
rule to be retroactive); <u>Peterson v. Cain</u>, 302 F.3d 508, 511-15 (5th
Cir. 2002), <u>cert. denied</u>, 537 U.S. 1118 (2003) (applying anti-
retroactivity principles of <u>Teague v. Lane</u>, 489 U.S. 288 (1989), to
analysis of delayed accrual rule contained in 28 U.S.C. section
2244(d)(1)(C)).


Application of subsection D of 28 U.S.C. section 2244(d)(1) does
not aid Petitioner.  Petitioner has failed to allege, and it fails to
appear, that Petitioner could not have discovered by June 28, 2004,
through the exercise of "due diligence," the factual predicates for
his claims that the trial court allegedly improperly denied
Petitioner's motion for a mistrial and committed instructional error,
his claims that trial counsel assertedly conducted an inadequate
cross-examination and allegedly failed to object to prosecutorial
misconduct, and his claims that appellate counsel allegedly

11

ineffectively failed to raise these issues on appeal.  Indeed, the
factual predicates for these claims were evident no later than the
time of Petitioner's direct appeal.  See Hasan v. Galaza, 254 F.3d
1150, 1154 n.3 (9th Cir. 2001) (petitioner need not "understand the
legal significance" of the facts, rather than "simply the facts
themselves," before the "clock starts ticking").

However, Petitioner contends he delayed filing his state habeas
petitions because of an alleged need to obtain Mrs. Kim's telephone
records in support of Petitioner's claim counsel was ineffective for
allegedly failing to conduct an adequate investigation (see Pet. Mem.,
pp. 44-45).  Petitioner attaches to the Petition a declaration of
Petitioner, executed on May 7, 2007.  This declaration states that,
one or two days after Petitioner's arraignment, Petitioner told his
attorney to check telephone records concerning Mrs. Kim (Petition,
Ex. C, ¶¶ 15-16).  Petitioner alleges that his attorney did not
attempt to subpoena the records until about a month before trial, and
that the effort was unsuccessful because Mrs. Kim assertedly used
false names on her accounts (id., ¶ 16).  Petitioner alleges counsel's
failure to investigate prevented counsel from impeaching the testimony
of Mrs. Kim in which she denied that she knew Mr. Yim (id., ¶ 17).

The declaration shows Petitioner knew the factual basis for his
claim that counsel allegedly conducted an inadequate investigation
well before June 18, 2004.  Section 2244(d)(1)(D) does not suspend the
running of the statute of limitations while a petitioner collects
evidentiary support for his claim.  See Jurado v. Burt, 337 F.3d 638,
644 (6th Cir. 2003) (subsection D of section 2244(d)(1) does not

1   suspend the running of the statute of limitations while a habeas

2   petitioner "gathers every possible scrap of evidence that might

3   support his claim"); Flanagan v. Johnson, 154 F.3d 196, 199 (5th Cir.

4   1998) (same); Powelson v. Sullivan, 2006 WL 2263908, at *4 (N.D. Cal.

5   Aug. 8, 2006) (same).  Therefore, section 2244(d)(1)(C) does not

6   furnish a date later than June 28, 2004, for commencement of the

7   limitations period.

8

9       Petitioner appears to rely on section 2244(d)(1)(B) for a delayed

10   accrual of the statue of limitations.  Petitioner contends that the

11   prison staff and/or California Supreme Court prevented Petitioner from

12   filing a timely petition for review (Pet. Mem., pp. 43-44).

13   Petitioner contends that a clerk of the California Supreme Court

14   refused to file the petition because the Court received it after the

15   deadline of June 27, 2004 (Pet. Mem., p. 43-44).  Petitioner argues

16   that his conviction became final on September 18, 2004 (Pet. Mem,

17   p. 43; Reply, p. 3).[5]

18   ///

19

20         [5]     Petitioner attaches to the Petition a copy of a letter

21   from a deputy clerk of the California Supreme Court, dated
      June 30, 2004, acknowledging receipt of the petition on that

22   date, stating that the petition was untimely, and advising
      Petitioner that he could submit an application for relief from

23   default (Petitioner's Ex. T).  Petitioner asserts he filed an
      application for relief from default in the California Supreme

24   Court, but allegedly received no acknowledgment that this
      application had been filed, which assertedly led Petitioner to

25   conclude that the California Supreme Court had accepted the
      petition for review for filing (Pet. Mem., p. 44).  Petitioner

26   contends he never received the petition for review from the

27   California Supreme Court, and speculates that the petition was
      lost in the mail (Pet. Mem.,

28   p. 44).

1    The Court need not resolve the issue.  For the reasons discussed
2  below, even assuming, _arguendo_, Petitioner's conviction did not become
3  final until September 18, 2004, the statue of limitations bars the
4  present Petition.  Petitioner did not file a federal habeas petition
5  within the one-year period after that date, and neither statutory
6  tolling nor equitable tolling enables Petitioner to avoid the
7  limitations bar.

8

9    The statute of limitations is tolled during the intervals between
10  a state court's disposition of a state court petition and the filing
11  of a new, "properly filed" petition at the next level of state court
12  review.  _See_ _Carey v. Saffold_, 536 U.S. 214, 215 (2002); 28 U.S.C. §
13  2244(d)(2); _Nino v. Galaza_, 183 F.3d at 1006.  Here, statutory tolling
14  commenced no earlier than May 5, 2005, the date Petitioner signed his
15  Superior Court habeas petition (_see_ Respondent's Lodgment 7).  _See_
16  _Stillman v. LaMarque_, 319 F.3d 1199, 1201-02 (9th Cir. 2003) (applying
17  prison mailbox rule to determine date of filing of state habeas
18  petition).  Assuming, _arguendo_, Petitioner's conviction became final
19  on September 18, 2004, Petitioner was not entitled to tolling during
20  the period of more than six months between that date and May 5, 2005,
21  the date statutory tolling began.  _See_ _Nino v. Galaza_, 183 F.3d at
22  1006.  Therefore, only approximately five and a half months of the
23  limitations period remained as of the date statutory tolling began.

24

25    Petitioner signed his Court of Appeal petition on May 15, 2005
26  (_see_ Respondent's Lodgment 8).  Therefore, the limitations period was
27  tolled from May 5, 2005 until August 2, 2005, the date the Court of
28  Appeal denied the petition.

1    The earliest possible date Petitioner could be deemed to have
2    filed his California Supreme Court habeas petition is the date
3    Petitioner signed that petition, July 26, 2006.[6] Petitioner thus
4    waited almost a year after the Court of Appeal's August 2, 2005 denial
5    before signing his California Supreme Court petition.

6

7    An untimely state habeas petition is not a "properly filed"
8    petition for purposes of statutory tolling under section 2244(d)(2).
9    Pace v. DiGuglielmo, 544 U.S. 408, 412-13 (2005); see also Allen v.
10   Siebert, 128 S. Ct. 2, 4-5 (2007); Carey v. Saffold, 536 U.S. 214, 225
11   (2002) (California state habeas petition filed after unreasonable
12   delay not "pending" for purposes of section 2244(d)(2)).  Where a
13   state court denies a habeas petition without a "clear indication" that
14   the petition was timely or untimely, a federal habeas court "must
15   itself examine the delay in each case and determine what the state
16   courts would have held in respect to timeliness."  Evans v. Chavis,
17   544 U.S. 189, 198 (2006).

18

19   Here, the California Supreme Court denied Petitioner's habeas
20   petitions with citations which did not indicate the petitions were
21   untimely (see Respondent's Lodgments 9, 10).  Therefore, because the
22   California Supreme Court did not give any "clear indication" regarding
23   the timeliness, this Court must "itself examine the delay in each case
24   and determine what the state courts would have held in respect to
25   timeliness."  Evans v. Chavis, 544 U.S. at 198.
26   ///

27

---

28        [6]    See Stillman v. LaMarque, 319 F.3d at 1201-02.

1    In California, a petition is timely if filed within a "reasonable
2  time" after the petitioner learns of the grounds for relief.  Carey v.
3  Saffold, 536 U.S. at 235 (citations omitted).  In Evans v. Chavis, the
4  petitioner delayed over three years before filing his California
5  Supreme Court habeas petition.  Evans v. Chavis, 546 U.S. at 192.  The
6  petitioner attempted to explain the delay by contending that his work
7  schedule prevented him from using the law library and that prison
8  lockdowns confined him to his cell.  Id. at 200.  However, the
9  petitioner conceded that he obtained a new prison job approximately
10  18 months after the Court of Appeal denied his habeas petition, the
11  hours of which permitted him to use the library, and also conceded
12  that the prison was "'relatively lockdown free'" for a six-month
13  period.  Id. at 201.  The Supreme Court indicated that, even assuming
14  the truth of the petitioner's explanations for the delay, there
15  remained an unexplained, unjustified delay of six months.  Id.  The
16  Supreme Court deemed the petition untimely, finding "no authority
17  suggesting, . . . [or] any convincing reason to believe, that
18  California would consider an unjustified or unexplained 6-month filing
19  delay 'reasonable.'"  Id.  In Gaston v. Palmer, 447 F.3d 1165, 1167
20  (9th Cir. 2006), cert. denied, 127 S. Ct. 979 (2007) the Ninth
21  Circuit, following Evans v. Chavis, held that the California
22  petitioner in that case was not entitled to interval tolling for
23  unexplained delays of ten, fifteen and eighteen months.
24
25    Here, Petitioner contends the delay of almost a year preceding
26  his signing of the California Supreme Court petition is neither
27  unexplained nor unreasonable.  Petitioner alleges the delay was
28  reasonable and/or should be excused because of: (1) the alleged need

1   for further investigation; (2) Petitioner's alleged actual innocence;

2   (3) the Superior Court's alleged failure to appoint counsel for

3   Petitioner; and (4) alleged inadequate law library access (Pet. Mem.,

4   pp. 43-49).  As discussed below, none of these allegations reasonably

5   explain Petitioner's delay.

6

7        Petitioner first asserts that the delay allegedly resulted from

8   Petitioner's need to investigate further in order to obtain Mrs. Kim's

9   telephone company records (Pet. Mem., pp. 44-45).  However, Petitioner

10  was able to file his Superior Court and Court of Appeal petitions

11  without first obtaining such records.  Petitioner plainly could have,

12  but did not, file a California Supreme Court petition in the same time

13  frame.

14

15       Petitioner's alleged actual innocence does not provide any

16  explanation for Petitioner's delay in filing a timely California

17  Supreme Court habeas petition.[7]  In California, "[a] claim that is

18  substantially delayed without good cause, and hence [which] is

19  untimely," may be entertained on the merits if the petitioner

20  demonstrates that he is actually innocent.  See In re Robbins, 18 Cal.

21  4th 770, 780-81, 77 Cal. Rptr. 2d 153, 959 P.2d 311 (1998).  Thus,

22  actual innocence is not an explanation for delay, but rather a ground

23  sometimes permitting a court to entertain an untimely petition.

24  Hence, Petitioner's alleged actual innocence cannot demonstrate that

25  his delay in filing a California Supreme Court petition was

26  _____

27       [7]   To the extent Petitioner may suggest actual innocence
    as a basis for equitable tolling, the Court discusses this
28  contention below.

17

1  reasonable.

2

3      The Superior Court's alleged failure to appoint counsel for

4  Petitioner does not show Petitioner acted reasonably in waiting almost

5  a year to file his California Supreme Court petition.   See Johnson v.

6  United States, 544 U.S. 295, 311 (2005) (motion to vacate filed

7  pursuant to 28 U.S.C. section 2255 untimely; petitioner's pro se

8  status and alleged lack of sophistication insufficient to show

9  reasonable diligence; "we have never accepted pro se representation

10 alone or procedural ignorance as an excuse for prolonged inattention

11 when a statute's clear policy calls for promptness").   Furthermore,

12 Petitioner was able to file both a Superior Court petition and a Court

13 of Appeal petition pro se.

14

15     Petitioner also asserts that an alleged lack of law library

16 access at his place of incarceration (the California State Prison,

17 Solano County) explains the delay in filing his California Supreme

18 Court petition (Reply, p. 12; see also Pet. Mem., pp. 46-48).

19 According to Petitioner, after the Court of Appeal's August 2, 2005

20 order denying Petitioner's habeas petition, Petitioner had "no more

21 than about five to ten hours of law library access per month"

22 (Petition, p. 48).   Petitioner relies upon two declarations of a law

23 library clerk, David Lang, which are attached to the Petition (see

24 Reply, p. 5, citing Petition, Exs. U, V).

25

26     The first declaration bears a signature date of October 7, 2005

27 (Petition, Ex. U).   In the first declaration, Lang states that he was

28 assigned as a clerk in the Level III law library at the California

State Prison, Solano County, for slightly less than two years, until he was "unassigned" on March 3, 2005 (Petition, Ex. U, ¶ 1). Lang states that, in early February of 2004, the library lacked a supervisor, and "was closed nearly half the time it should have been open" (id., ¶ 2). According to Lang, normal operation did not resume until the summer of 2005 (id.). Lang states that, on "many occasions," there was no library access "due to fog, emergency counts, 'staff meetings,' yard recalls, State holidays, and extra days off for staff" (id., ¶ 3). Lang states that, throughout 2004 and "thus far in 2005" there were numerous lockdowns during which the library was closed (id., ¶ 4). Lang also stated that prisoners were allowed to use the library only on their two days off per week, and that the Level III library had an inadequate maximum seating capacity of 24 prisoners (id., ¶¶ 5-6). Lang further states that prisoners with court deadlines were given priority over prisoners lacking proof of a court deadline within 30 days, and hence it allegedly was extremely difficult for prisoners to prepare habeas petitions (id., ¶ 7).

At most, Lang's first declaration covers the period up until the date Lang signed the declaration, October 5, 2005. However, even assuming, arguendo, the truth of Lang's allegations, Lang's declaration fails to explain Petitioner's delay of over seven months before signing his California Supreme Court petition on July 25, 2006. Hence, Lang's first declaration is insufficient to justify statutory tolling. See Evans v. Chavis, 544 U.S. at 201 (unexplained delay of six months insufficient).

///

///

1    Lang's second declaration concerns library access in 2005 and
2    part of 2006 (see Petition, Ex. V).  However, the copy of this
3    declaration attached to the Petition is missing the third and last
4    page.  The two pages of the declaration attached to the Petition do
5    not contain any verification, date or signature.  Hence, the Court
6    need not consider this declaration as evidence.

7

8    In any event, even if the Court were to consider the two pages of
9    Lang's second declaration attached to the Petition, Petitioner's
10   evidence still would fail to show that his delay was reasonable.  In
11   the second declaration, Lang states that, due to a reassignment, he
12   became personally familiar with the law library situation since
13   October of 2005 (Petition, Ex. V, ¶ 2).  Lang states that the alleged
14   obstacles to library access described in his prior declaration still
15   existed,[8] and describes two additional alleged obstacles (id., ¶ 3).
16   Lang asserts, on information and belief, that a program change in
17   January of 2006 limited each yard's library access to about ten days
18   per month, and also implemented a "split yard" schedule which limited
19   a prisoner's daily maximum yard time to a maximum of about 2 to 2-1/2
20   hours (id., ¶¶ 4-5).  Lang also alleges that, since January of 2006, a
21   prisoner housed on Yard One assertedly was allowed a maximum of eleven
22   two-hour periods of library access each month (id., ¶ 6).  A prisoner
23   whose days off were not on Sunday and Monday allegedly would have no
24   more than six or seven two-hour periods of law library time (id.).
25   Lang concludes that, since January of 2006, it was "far more
26   difficult" for prisoners without court deadlines to use the law

27   _____

28        [8]    However, it does not appear from the declarations that
     the alleged absence of a library supervisor continued into 2006.

20

1   library (id.).

2

3        The Court observes that, despite the alleged impediments to

4   library access described in Lang's first declaration, during the time

5   period mentioned in the first declaration Petitioner was able to

6   prepare and file a 34-page Superior Court petition, accompanied by

7   exhibits (which evidently served as a template for his subsequent

8   state petitions) and a 39-page Court of Appeal petition, also

9   accompanied by exhibits (see Respondent's Lodgments 7, 8).

10  Petitioner's ability to prepare and file two lengthy state habeas

11  petitions under the alleged conditions described in the first

12  declaration fatally undermines any contention that Petitioner was

13  unable to prepare and file a timely California Supreme Court petition

14  under the same or similar alleged conditions.

15

16       Lang's second declaration indicates that, as of January 2006,

17  prisoners on Yard One were allowed a maximum of eleven two-hour

18  periods of library access per month, or twenty-two hours per month

19  (Petition, Ex. V).  Petitioner has not shown why he could not have

20  prepared and filed his California Supreme Court petition under these

21  conditions.  Petitioner's Court of Appeal and California Supreme Court

22  petitions are similar, and portions are identical.  Petitioner added

23  approximately five pages to Ground Three of Petitioner's California

24  Supreme Court petition, containing argument concerning Petitioner's

25  claim of ineffective assistance of counsel (see Respondent's Lodgments

26  9, 10, pp. 24-28).  Petitioner also made several relatively minor

27  changes or additions to Grounds One through Five in his California

28  Supreme Court petition, and added some exhibits to that petition.

1   Petitioner also added two new grounds to his California Supreme Court
2   petition, Grounds Five and Six.  However, "Ground Six" is not a claim
3   for relief, but rather contains argument that state-imposed
4   impediments and the need for further investigation had hindered
5   Petitioner's efforts to obtain habeas relief (Respondent's Lodgments
6   9, 10, pp. 43-49).  "Ground Seven" alleges that Petitioner's appellate
7   counsel provided ineffective assistance on appeal (Respondent's
8   Lodgments 9, 10, pp. 50-51).  Grounds Six and Seven together comprise
9   only nine pages of the 53-page California Supreme Court petition.

11      As discussed above, the record shows Petitioner was able to
12  prepare his two lengthy previous petitions under the conditions
13  alleged in Lang's first declaration, and much of Petitioner's
14  California Supreme Court petition replicates the content of
15  Petitioner's Court of Appeal petition.  Particularly under these
16  circumstances, Petitioner has not shown that library access[9] was
17  insufficient to enable Petitioner to prepare a timely California
18  Supreme Court petition.

20      In sum, Petitioner has not shown he acted reasonably in delaying
21  nearly a year before filing his California Supreme Court petition.
22  Therefore, under Evans v. Chavis, Petitioner is not entitled to
23  statutory tolling between the date the Court of Appeal denied the

24  _____

25      [9]   Nothing in the record indicates that Petitioner's job
    assignment limited his library access even further than a maximum
26  of twenty-two hours per month.  Moreover, nothing in Lang's
    declarations supports Petitioner's allegation that Petitioner's
27  library access was limited to no more than five to ten hours per
    month.  In any event, such alleged limitation would not alter the
28  result herein.

petition filed in that court and the date Petitioner signed his
California Supreme Court petition.

Hence, the statutory tolling period expired on August 2, 2005.
Petitioner did not sign the present Petition until May 7, 2007, over a
year and nine months later.  The filing of an untimely state petition
cannot toll the statute.  See Ferguson v. Palmateer, 321 F.3d 820, 823
(9th Cir.), cert. denied, 540 U.S. 924 (2003) ("section 2244(d) does
not permit the reinitiation of the limitations period that has ended
before the state petition was filed"); Jiminez v. Rice, 276 F.3d 478,
482 (9th Cir. 2001), cert. denied, 538 U.S. 949 (2003) (filing of
state habeas petition "well after the AEDPA statute of limitations
ended" does not affect the limitations bar); Webster v. Moore, 199
F.3d 1256, 1259 (11th Cir.), cert. denied, 531 U.S. 991 (2000) ("[a]
state-court petition . . . that is filed following the expiration of
the limitations period cannot toll that period because there is no
period remaining to be tolled"); see also Nino v. Galaza, 183 F.3d at
1006 (statute of limitations is not tolled between conviction's
finality and the filing of the first state collateral challenge).
Therefore, statutory tolling does not rescue the Petition from the
limitations bar.  Absent equitable tolling (and regardless of whether
Petitioner's conviction became final on June 27, 2004 or September 18,
2004), the Petition is untimely.

The Ninth Circuit permits equitable tolling of the statute of
limitations "if 'extraordinary circumstances beyond a prisoner's
control make it impossible to file a petition on time.'"  See Spitsyn
v. Moore, 345 F.3d 796, 799 (9th Cir. 2003) (citation omitted); see

23

1  also <u>Lawrence v. Florida</u>, 127 S. Ct. 1079, 1085 (2007) (assuming,
2  without deciding, that equitable tolling could apply to habeas statute
3  of limitations set forth in 28 U.S.C. section 2244(d); <u>Pace v.</u>
4  <u>DiGuglielmo</u>, 544 U.S. 408, 418 n.8 (2005) (same).  "Generally, a
5  litigant seeking equitable tolling bears the burden of establishing
6  two elements: (1) that he has been pursuing his claims diligently, and
7  (2) that some extraordinary circumstance stood in his way."  <u>Pace v.</u>
8  <u>DiGuglielmo</u>, 544 U.S. at 418 (citation omitted); <u>see also</u> <u>Lawrence v.</u>
9  <u>Florida</u>, 127 S. Ct. at 1085.  "A petitioner must show that his
10 untimeliness was caused by an external impediment and not by his own
11 lack of diligence."  <u>Bryant v. Ariz. Attorney General</u>, 499 F.3d 1056,
12 1061 (9th Cir. 2007).  Petitioner must show that the alleged
13 "extraordinary circumstances" were the "cause of [the] untimeliness."
14 <u>Roy v. Lampert</u>, 465 F.3d 964, 969 (9th Cir. 2006), <u>cert. denied</u>, 127
15 S. Ct. 1880 (2007) (quoting <u>Spitsyn v. Moore</u>, 345 F.3d at 799).
16

17      A court "cannot arbitrarily pick a number of days or weeks to
18 toll based on some generalized problem or difficulty a petition has
19 encountered."  <u>Nguyen v. Hickman</u>, 2001 WL 58969, at *2 (N.D. Cal.,
20 Jan. 11, 2001).  "Rather, equitable tolling depends on a specific
21 showing by a petitioner that a particular problem prevented him from
22 meeting the deadline for a particular amount of time."  <u>Id.</u>
23

24      Petitioner alleges no basis for equitable tolling other than the
25 four purported justifications for delay mentioned earlier.  For the
26 following reasons, none of these alleged justifications support
27 equitable tolling.
28 ///

To the extent Petitioner contends that a purported need for further investigation of telephone numbers entitles him to equitable tolling, Petitioner's contention lacks merit.  As indicated above, the alleged need for such further investigation did not prevent Petitioner from filing habeas petitions in the Superior Court and the Court of Appeal.  Hence, Petitioner has not shown that the alleged need for further investigation was the "cause of his untimeliness."  See Spitsyn v. Moore, 345 F.3d at 799.

Petitioner's allegation that the Superior Court failed to appoint counsel for Petitioner does not warrant equitable tolling.  See Roy v. Lampert, 465 F.3d at 970 (prisoner's pro se status insufficient to support equitable tolling).

Petitioner also alleges actual innocence.  The Ninth Circuit has left open the possibility of an "actual innocence" exception to the statute of limitations for a petitioner who shows that "in light of all the evidence, including evidence not introduced at trial, 'it is more likely than not that no reasonable [trier of fact] would have found petitioner guilty beyond a reasonable doubt.'"  Majoy v. Roe, 296 F.3d 770, 776 (9th Cir. 2002) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995) ("Schlup")); see also United States v. Zuno-Arce, 339 F.3d 886, 890 n.5 (9th Cir. 2003), cert. denied, 540 U.S. 1208 (2004).  Petitioner has failed to meet this "exacting gateway standard."  See Majoy v. Roe, 296 F.3d at 775.

Under the Schlup standard referenced in Majoy v. Roe, to show actual innocence sufficient to overcome a procedural default, a

1 | petitioner must furnish "'new reliable evidence . . . that was not
2 | presented at trial.'" See House v. Bell, 126 S. Ct. 2064, 2077-78
3 | (2006) (quoting Schlup, 513 U.S. at 324; ellipses added); Griffin v.
4 | Johnson, 350 F.3d 956, 963 (9th Cir. 2003), cert. denied, 541 U.S. 998
5 | (2004).   In his actual innocence argument, Petitioner provides only
6 | statements of law (including a citation to Schlup), but does not point
7 | to any new evidence that allegedly shows Petitioner's innocence (see
8 | Petition, pp. 45-46).   Elsewhere in the Petition, Petitioner mentions
9 | certain evidence that his trial counsel allegedly failed to discover
10 | or introduce, including alleged evidence that Petitioner loaned money
11 | to fellow Koreans in the community, evidence that Petitioner had made
12 | plans to surrender to police, and evidence that assertedly would have
13 | impeached Mrs. Kim's trial testimony (Petition, pp. 26-28).   It is
14 | unclear whether Petitioner contends that this evidence demonstrates
15 | his alleged innocence.

16 |

17 |      To the extent Petitioner relies only on the evidence introduced
18 | at trial, such a showing is insufficient to show Petitioner's actual
19 | innocence.  See Smith v. Schriro, 238 Fed. Appx. 215 (9th Cir. 2007),
20 | cert. denied, ___ U.S. ___, 2007 WL 2708049 (Nov. 5, 2007);[10] Houston
21 | v. Castro, 2003 WL 21056800, at *3 (N.D. Cal., May 8, 2003) (rejecting
22 | actual innocence exception to statute of limitations, where petitioner
23 | presented no new evidence of actual innocence, but only "the same
24 | evidence that the trial court considered"); see also Bannister v.
25 | Delo, 100 F.3d 610, 618 (8th Cir. 1996), cert. denied, 521 U.S. 1126

26 | _____

27 |      [10]    The Court may cite unpublished Ninth Circuit opinions
       issued on or after January 1, 2007.  See U.S. Ct. App. 9th Cir.
28 | Rule 36-3(b); Fed. R. App. P. 32.1(a).

1  (1997) ("putting a different spin on evidence that was presented to a
2  jury does not satisfy the requirements set forth in Schlup";
3  citations, internal quotations and brackets omitted); Gomez v. Jaimet,
4  350 F.3d 673, 680 (7th Cir. 2003) (same, citing Bannister v. Delo).
5
6      To the extent Petitioner relies upon alleged evidence, mentioned
7  above, which his counsel assertedly failed to introduce at trial,
8  Petitioner's actual innocence claim also fails.  Neither evidence that
9  Petitioner assertedly made loans to persons in the Korean community
10  nor evidence that Petitioner assertedly planned a peaceful surrender
11  to police are inconsistent with the prosecution's evidence that
12  Petitioner took items from the Kims' home sometime prior to
13  September 12 or 13, 2000, or with the prosecution's evidence that
14  Petitioner entered the Kims' home on September 15, 2000 in order to
15  commit robbery.  Hence, Petitioner's purported evidence regarding
16  loans and surrender plans is insufficient to meet the Schlup standard.
17
18      Additionally, purported evidence allegedly impeaching Mrs. Kim's
19  testimony that she did not know Mr. Yim, or allegedly showing that
20  Mrs. Kim had some sort of business relationship with Mr. Yim, or
21  allegedly showing that Mrs. Kim was involved in unlawful activities,
22  does not fundamentally undermine the prosecution's case, and hence is
23  insufficient to meet the exacting Schlup standard.  See Sistrunk v.
24  Armenakis, 292 F.3d 669, 674-75 (9th Cir. 2002) (en banc), cert.
25  denied, 537 U.S. 1115 (2003) (rejecting Schlup claim supported by
26  impeachment evidence which did not fundamentally call into question
27  the reliability of petitioner's conviction); Gandarela v. Johnson, 286
28  F.3d 1080, 1086 (9th Cir. 2002), cert. denied, 537 U.S. 1117 (2003)

1  (rejecting gateway claim supported by speculative and collateral

2  impeachment evidence that did not contain any direct information

3  regarding the crime).  Therefore, even assuming a sufficient showing

4  of actual innocence can warrant equitable tolling, Petitioner has made

5  no such showing here.

6

7      Also without merit is Petitioner's contention that the alleged

8  lack of law library access warrants equitable tolling.  As previously

9  indicated, regardless of any alleged reduction or elimination of law

10  library access, Petitioner was able to file his lengthy Superior Court

11  and Court of Appeal petitions while under such alleged disabilities,

12  and was afforded access sufficient to prepare and file a California

13  Supreme Court petition based largely on his Court of Appeal petition.

14  Therefore, Petitioner has not shown that extraordinary circumstances

15  beyond Petitioner's control prevented Petitioner from filing a timely

16  federal petition.  See Gaston v. Palmer, 417 F.3d at 1035 (district

17  court correctly held that alleged lack of library access due to

18  petitioner's physical disabilities did not constitute impediment to

19  filing under 28 U.S.C. section 2244(d)(1)(B), where petitioner

20  prepared and filed state court applications during period of alleged

21  impediment); see also Meadows v. Jacquez, 2007 WL 1852527 (9th Cir.

22  June 26, 2007), petition for cert. filed (Nov. 20, 2007) (No. 07-7879)

23  (alleged mental disabilities did not warrant equitable tolling, where

24  petitioner was able to file mandamus petitions during relevant time

25  period).

26

27      In sum, Petitioner has failed to show an entitlement to equitable

28  tolling.  Therefore, and even assuming, arguendo, Petitioner's

1   conviction became final on September 18, 2004, the Petition is

2   untimely.

3

4                              **RECOMMENDATION**

5

6        For all of the foregoing reasons, IT IS RECOMMENDED that the

7   Court issue an Order: (1) approving and adopting this Report and

8   Recommendation; and (2) directing that Judgment be entered denying and

9   dismissing the Petition with prejudice.

10

11        Dated: December 12, 2007.

12

13

14        _____/S/_____

15                    CHARLES F. EICK
              UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28

29

**NOTICE**

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in the Local Rules Governing the Duties of Magistrate Judges and review by the District Judge whose initials appear in the docket number. No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the judgment of the District Court.